# United States Court of Appeals
# for the Fifth Circuit

_____

No. 24-50034

_____

United States Court of Appeals
Fifth Circuit

**FILED**
September 5, 2025

Lyle W. Cayce
Clerk

United States of America,

*Plaintiff—Appellee*,

*versus*

Asia Victor Tsatenawa,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:21-CR-73-1

_____

Before Jones, Stewart, and Ramirez, *Circuit Judges*.

Per Curiam:[*]

Asia Victor Tsatenawa appeals the district court's denial of his motion to suppress evidence seized from his brother's vehicle, his vehicle, and his home. We AFFIRM.

I

On December 3, 2020, San Antonio Police Department Officers David Below and James Van Kirk responded to a report of a "black male in a

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

red pickup truck" pointing a firearm at another male at the M&M Mart, a gas station. When the officers arrived, they saw a black male sitting in the driver's seat of a red truck parked in front of the M&M Mart and facing the street. The male got out of the truck and ran, leaving the truck's door open. After an unsuccessful chase, the officers returned to the scene and found the truck unlocked with the door now closed but the window rolled down.

Officer Below searched the truck and found a cell phone under the truck's center console. He picked up the unlocked phone and opened the Facebook application, which was logged in as "Asia Tsatenawa." He recognized Tsatenawa as a convicted felon known as one of the "two big time" narcotics dealers in the area. Officer Below said to Officer Van Kirk, "It's Asia . . . It's his Facebook." Officer Van Kirk did not participate in the search, however, informing Officer Below that they had "no authority" to check the unsecured truck.

Officer Below asked some bystanders for Tsatenawa's location and the truck's owner. A woman named T. Jackson informed the officers that the truck belonged to Tsatenawa's brother; she had the keys to the truck in her hand. Officer Below asked for the keys and she gave them to him. She later returned and told Officer Below she had Tsatenawa's brother on the phone, and the brother confirmed that he lent Tsatenawa the truck.

The officers were about to leave the scene when their supervisor instructed them to have the truck towed because, although it was parked in front of the M&M Mart, it was blocking the public sidewalk. An inventory search of the truck prior to towing revealed a loaded firearm—a "Century Arms AK 47 style, 7.62x39mm pistol"—underneath a sweatshirt that was within arm's reach of the driver's seat.

"[B]ased on information [he] gathered personally and received from other law enforcement agencies and sources of information," Special Agent

No. 24-50034

Chris Beach with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) submitted an affidavit in support of a criminal complaint charging Tsatenawa with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).

Officers found Tsatenawa on December 8, 2025, as he was leaving his apartment and entering his car. He attempted to run but officers caught and arrested him. A search of Tsatenawa's car yielded marijuana and cocaine. Because the officers "believed that [] Tsatenawa has additional narcotics" in his apartment based on his answers to the officer's questions, they sought and obtained a search warrant for the apartment, where they recovered pistols, digital scales with narcotics residue, plastic baggies, and a "large amount" of cocaine, crack cocaine, marijuana, and pills. "The aggregate weight of all recovered narcotics was 323 grams of cocaine (including crack cocaine), 438 grams of marijuana, [and] 39 grams of unidentified pills."

## II

Tsatenawa was charged in a five-count indictment with possession with intent to distribute cocaine, being a felon in possession of a firearm, and possession of a firearm in furtherance of a drug trafficking crime. He moved to suppress "all evidence (including the pistols and drugs)" seized "in connection with this cause." He argued that (1) the search of his brother's truck and his phone at the M&M Mart was unlawful, and (2) the subsequent warrants issued were invalid, as they contained material misrepresentations and omissions and used information from the unlawful searches at the M&M Mart. The Government responded that Tsatenawa lacked standing to challenge the searches of the truck and his phone because he abandoned them, so he lacked any reasonable expectation of privacy. It also argued that the good-faith exception to the exclusionary rule applied to the evidence seized during the subsequent searches.

No. 24-50034

On August 10, 2022, the district court held a hearing on the motion to suppress, where it heard testimony from Officer Below and viewed body cam footage of the incident. It ultimately denied the motion, concluding that Tsatenawa had abandoned the truck at the M&M Mart and therefore lacked standing to challenge its search, and that the good-faith exception to the Fourth Amendment's exclusionary rule applied to the subsequent search of Tsatenawa's apartment. Tsatenawa moved for reconsideration, and the district court denied his motion.

Tsatenawa pleaded guilty to Count Two (possession with intent to distribute cocaine) and Count Five (possession of a firearm in furtherance of a drug trafficking crime) but reserved his right to appeal the denial of his motion to suppress. He was sentenced to 96 months imprisonment for Count Two and 60 months on Count Five, "to run consecutively for a total of one-hundred fifty-six (156) months," followed with a 3-year term of supervised release on Count Two and a 5-year term on Count Five to run concurrently. He timely appealed the denial of his suppression motion.

## III

When examining a district court's denial of a motion to suppress evidence, we review factual findings for clear error and conclusions of law de novo. *United States v. Hearn*, 563 F.3d 95, 101 (5th Cir. 2009). Legal conclusions include the ultimate constitutionality of law enforcement action and determinations about the existence of probable cause. *United States v. Keller*, 123 F.4th 264, 267 (5th Cir. 2024); *United States v. Robinson*, 741 F.3d 588, 594 (5th Cir. 2014). "Factual findings are clearly erroneous only if a review of the record leaves this [c]ourt with a definite and firm conviction that a mistake has been committed." *United States v. Montemayor*, 55 F.4th 1003, 1008 (5th Cir. 2022) (quoting *Hearn*, 563 F.3d at 101). "The clearly erroneous standard is particularly deferential where, as here, 'denial of a

suppression motion is based on live oral testimony . . . because the judge had the opportunity to observe the demeanor of the witnesses.'" *Robinson*, 741 F.3d at 594 (quoting *United States v. Gibbs*, 421 F.3d 352, 357 (5th Cir.2005) (cleaned up)). We must view all evidence in the light most favorable to the prevailing party—here, the Government—unless this view is "inconsistent with the trial court's findings or is clearly erroneous considering the evidence as a whole." *United States v. Tovar*, 719 F.3d 376, 384–85 (5th Cir. 2013) (quoting *United States v. Scroggins*, 599 F.3d 433, 440 (5th Cir. 2010)).

We may affirm the district court's decision on any basis established by the record. *United States v. Pack*, 612 F.3d 341, 347 (5th Cir. 2010) (citing *United States v. Charles*, 469 F.3d 402, 405 (5th Cir. 2006)).

## IV

Tsatenawa contends that the district court erred in denying his motion to suppress the evidence seized from the truck, his phone, and his apartment.

## A

Tsatenawa first contends that officers lacked probable cause to conduct a warrantless search of the truck and his phone and that no exceptions to the warrant requirement applied. He argues that there is no support for the district court's conclusion that he abandoned the truck.

The Fourth Amendment protects individuals "against unreasonable search and seizures." U.S. Const. amend. IV. But because "[s]tanding is a central component of Fourth Amendment jurisprudence," a "defendant seeking to suppress evidence under the Fourth Amendment must demonstrate that his or her individual rights were violated." *United States v. Powell*, 732 F.3d 361, 374 (5th Cir. 2013) (citing *Rakas v. Illinois*, 439 U.S. 128, 134 (1978)). This requires determining whether the defendant "has a legitimate expectation of privacy" in the property that was searched. *Rakas*,

439 U.S. at 134. A defendant who abandons property before it is searched forfeits that expectation of privacy. *See United States v. Wise*, 877 F.3d 209, 222 n.9 (5th Cir. 2017); *see also United States v. Iraheta*, 764 F.3d 455, 461 (5th Cir. 2014) ("A defendant who abandons . . . property *prior to the search* does not have standing to challenge a search subsequent to his abandonment . . . ." (emphasis is original)).

"Abandonment is primarily a question of intent," which may be inferred from "all relevant circumstances existing at the time." *United States v. Colbert*, 474 F.2d 174, 176 (5th Cir. 1973). It must be voluntary, meaning it cannot be influenced by improper police conduct. *United States v. Alvarez*, 6 F.3d 287, 289 (5th Cir. 1993). The legal presence of police officers for investigatory purposes does not render an abandonment involuntary, however. *Id.* (citing *Colbert*, 474 F.2d at 176). We have found abandonment when a defendant has, while being pursued by law enforcement, discarded an item in a location that is easily accessible to the public. *See United States v. Edwards*, 441 F.2d 749, 751 (5th Cir. 1971) (car left near a ditch after police pursuit of the driver was abandoned); *United States v. Self*, 414 F. App'x 611, 614 (5th Cir. 2011) (unpublished) (phone left inside a car in hotel parking lot after the defendant fled the scene "[u]pon sight of the officers" was abandoned); *United States v. Williams*, 569 F2d 823, 826 (5th Cir. 1978) (unhooked trailer left at a rest stop on suspicion that officers were following the defendant was abandoned).

Here, Tsatenawa got out of the truck and ran when Officers Below and Van Kirk arrived at the M&M Mart. He left the unlocked truck with the door open and the window down parked at a gas station in a manner that blocked a public sidewalk. Considering "all relevant circumstances," *Colbert*, 474 F.2d at 176, Tsatenawa no longer had a legitimate expectation of privacy in the vehicle and its contents. *See Edwards*, 441 F.2d at 751.

No. 24-50034

Tsatenawa argues that the abandonment doctrine is inapplicable, citing *United States v. Scrivner*, 680 F.2d 1099 (5th Cir. 1982). In *Scrivner*, an officer responding to a silent burglar alarm in the middle of the night stopped the defendant and another truck at "a warehouse in poor repair." *Id.* at 1100. He let both drivers go but later returned to the warehouse, where he discovered "two loaded trucks leased by" the defendant with the keys in the ignition and doors slightly open. *Id.* The warehouse had been leased by the defendant to "load[] produce at night because it was cooler then." *Id.* Although leaving keys in the ignition was "doubtless careless and imprudent," the court found it did not constitute abandonment because nothing indicated the defendant had "cast the vehicles aside, relinquishing his interest in them." *Id.* at 1100–01.

*Scrivner* is distinguishable. Unlike this case, the defendant in *Scrivner* was not attempting to avoid law enforcement, and he left his vehicle at a property he had leased rather, not in an area easily accessible to the public. *See id.*; *see also United States v. Barlow*, 17 F.3d 85, 89 (5th Cir. 1994) (concluding that "a police officer who discovers an unlocked car left at the end of the public street with the key in the ignition [after a foot chase of a robber] could reasonabl[y] conclude that the car had been abandoned," despite the fact that it "had been left unoccupied for only a short time, [indicating] the owner is more likely to return"). Because Tsatenawa lacks standing under the Fourth Amendment to challenge either the search of the abandoned truck or his phone, he has not shown that the district court erred in denying his motion to suppress the evidence seized from the truck or his phone.[1]

_____

[1] Because Tsatenawa has not shown that he has standing to challenge the search of the truck, we need not consider his arguments regarding whether there was probable cause for the search or whether one of the exceptions to the warrant requirement applied.

B

Tsatenawa next argues that the affidavits that secured the warrants for his arrest and the search of his home withheld critical information about the officers' prior unconstitutional search of the truck and his phone. He contends that "[t]he facts surrounding that prior search, raise serious doubts about the officers' good faith at that earlier time before the warrant issuance."

A search warrant "must be voided if the defendant shows by a preponderance of the evidence that the affidavit supporting the warrant contained a false statement made intentionally or with reckless disregard for the truth and, after setting aside the false statement, the affidavit's remaining content is insufficient to establish probable cause." *United States v. Ortega*, 854 F.3d 818, 826 (5th Cir. 2017) (citing *Franks v. Delaware*, 438 U.S. 154, 155–65 (1978)). The "deliberate falsehood or reckless disregard for the truth" under *Franks* must be attributable to the affiant, not the officers relied upon in creating the affidavit. *United States v. Wake*, 948 F.2d 1422, 1428–29 (5th Cir. 1991).

In his affidavit in support of the arrest warrant, ATF Special Agent Beach specifically stated that the facts in the affidavit were based on information he personally gathered, as well as on information "from other law enforcement agencies and sources of information." The affidavit in support of the search warrant for Tsatenawa's apartment, signed by a detective, focuses on what officers observed at the time of arrest. Tsatenawa's "serious doubts" about the statements in the police report prepared by Officers Below and Van Kirk regarding the search of the truck are insufficient to show that the affiants for the subsequent arrest and search warrants acted with deliberate falsehood or reckless disregard for the truth. *Id.* Neither affidavit explicitly mentions that the affiant relied on the officers'

police report, and Tsatenawa provided no evidence to the contrary. *See United States v. Alvarez*, 127 F.3d 372, 374 (5th Cir. 1997) (noting that the party attacking the warrant bears the burden here). He has not demonstrated that the district court erred in failing to suppress the evidence obtained from his apartment.

## C

Finally, Tsatenawa argues that the good-faith exception cannot apply because the warrants for his arrest and the search of his apartment "are based on the fruit of the original illegal search of his vehicle and phone."

"Under the fruit of the poisonous tree doctrine, all evidence derived from the exploitation of an illegal search or seizure must be suppressed, unless the Government shows that there was a break in the chain of events sufficient to refute to inference that the evidence was a product of the Fourth Amendment violation." *United States v. Cotton*, 722 F.3d 271, 278 (5th Cir. 2013) (citation modified). This doctrine only "applies when the defendant has standing regarding the Fourth Amendment violation which constitutes the poisonous tree," however. *United States v. Olivares-Rangel*, 458 F.3d 1104, 1117 (10th Cir. 2006) (citing *United States v. Salvucci*, 448 U.S. 83, 85 (1980)); *see also* 6 Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 11.4 (6th ed. 2024) ("[A] defendant . . . can prevail on a 'fruit of the poisonous tree' claim only if he has standing regarding . . . a violation of his constitutional rights.").

As discussed, Tsatenawa lacks standing to challenge the legality of the original search, so the doctrine is inapplicable here.

## V

We AFFIRM the district court's denial of Tsatenawa's motion to suppress.